Reese, J.
delivered the opinion of the court.
Samuel Owen, in his last illness, and the day before his death, caused one of his neighbors to be sent for, with the purpose of having his last will prepared. He had for some years been unable to speak, but could readily communicate his thoughts by signs to the family, and also to them, and to others, by indicating words in a dictionary. He was in the full possession of his mental faculties. To the draughtsman of the paper propounded as his will, he indicated his wishes in the manner above stated, by pointing to the leading and important words in a dictionary. When the clauses were written in this manner, they were separately read to him, and he assented to each, and when they were all written he read the entire instrument as far as prepared, himself, and assented to the whole, and this comprised the entire instrument propounded as his will, except the appointment of an executor, and the attestation clause. The process of preparing the instrument was tedious and exhausting, the draughtsman not in good health, and at 10 or 11 *214 o’clock at night, having completed the instrument to the point stated, the further progress in it was suspended. ^ Business required' the draughtsman to leave early in the morning, but he promised the deceased to return in the evening to finish the matter; he did then return, but Samuel Owen was then out of his mind, and incapable of .transacting business, and shortly after died. In the course of drawing up the paper, the draughtsman had learned from the deceased, that he wished James C. Owen to be his executor, and he, therefore, added the clause appointing him to that office, and the attestation-clause. The paper propounded as the will of Samuel Owen, is as follows ;
“I, Samuel Owen, do make and publish this my last will and testament, hereby revoking and making void all other wills by me at any time made. First. I direct that my just debts be paid, as soon after, my death as possible, out of any monies I may die possessed of, or may come into the hands of my executor. Secondly. I give and bequeath to my brother James C. Owen, my boy Stephen, my carriage, my gold watch, my young gray'horse by Sir William, also one thousand dollars of Turnpike stock, to wit, twenty shares in the Harpeth Turnpike. Thirdly.. I give and bequeath to my niece Narcissa Robert Owen my bed, my sorrel filly by Pacific, also one thousand dollars of Turnpike stock, to wit, twenty shares in the Harpeth Turnpike. It is also my will, that James C. Owen hold the above named items as agent for the above named Narcissa R. Owen, and use it as agent for her benefit, and in the event of her decease, without issue, it is my will that the said James C. Owen shall have said property. Fourthly. I give to my brother James 0. Owen, for the benefit of my three nephews, Burnett H. Beasley, Charles C. Beasley and Felix O. Beasley, and I hereby constitute and appoint him agent, to hold, to use and disburse for their (the said Beasleys) benefit, the following items, to wit, one thousand dollars in Turnpike stock, to wit, twenty shaz'es in the Harpeth Turnpike. Fifthly. I will and bequeath my executor sell my land, lying on Mill creek, also my negro man Tom, also my land in Warren and Cannon counties, to wit, my interest in these lands. I will to be sold also, all other property, of whatsoever description, of which I may die possessed of, and the proceeds of which, together with the, monies in my possession at the time of my decease, also the money due to me by bonds or accounts, when collected, to be appropriated as above bequeathed. If any *215 surplus should remain in the hands of my executor — My desire is, that Tom should select himself a home, and be sold privately for a moderate price. Sixthly. I leave in the hands of my executor, of the money due me and to be raised as above directed, one hundred dollars for erecting tombs, and fifty dollars for fencing grave yard.” (I do hereby nominate and appoint James O. Owen my executor. In testimony whereof, I do, to this my last will, set my hand and seal, this 20th October, 1838. Signed, sealed and published in our presence, and we have subscribed our names hereto, this 20th day of October, 1838. Ferdinand Moore. Everett Owen.)
The above paper, except as to the latter portion of it, enclosed in brackets, containing the appointment of an executor, and an attestation-clause, and except, also, as to the real estate, was found by the jury in the circuit court, to be the last will and testament of Samuel Owen. Guthrie and wife, by their counsel, moved for a new trial, which being refused, they have prosecuted their writ of error to this court.
The correctness of the charge of the court, set forth in the record, has been but slightly questioned in the argument here, except in one particular, which we shall hereafter indicate. The argument of counsel has turned mainly upon the facts and circumstances attending the drawing up of the paper propounded, upon the state in which it was left, and the bequests contained in it. The instrument is unexecuted, and so far merely as relates to the appointment of an executor, and a clause of attestation, it is imperfect. It has not been controverted, that a paper unexecuted, and, in some instances, an imperfect paper may be set up as a testament, where the want of execution, or its being imperfect has been produced, not by abandonment, or change of purpose, on the part of testator, but by the act of God, that is, by extreme illness, mental alienation, sudden death, &c., if the paper, as far as it goes, express the will of the deceased, continuing to the time of his death, and if upon the face of the instrument it can be seen, that the legacies given to the objects of testator’s bounty, and the benefits conferred, would not, if the will had been finished, have been burthen-ed with charges in favor of others: in short, if it express his whole will ssfar as it goes.
The paper before us, was prepared slowly and with great deliberation, and under circumstances which made it more than ordinarily the work of testator himself. It was nearly finished; it proba *216 bly comprised in its scope, all the objects of testator’s bounty, and the frame of the instrument, the nature of the bequests, and the powers conferred in order to raise the money to pay the legacies, make it manifest, that if any thing had been added, it would not have been in the nature of a deduction from the legacies, or a charge or burthen upon them. The manner in which the will was made, the deliberation and sanction of it, as a whole, the circumstances which suspended its progress to a full completion, and the brief interval which elapsed before testator became unable to complete it, repel the notion of any change of purpose, and warranted the jury in arriving at the conclusion, that it contained his will to the time of his death. We think this instrument is sustained by the principles so distinctly announced by Sir John Nichol, in the case of Montefiore vs. Montefiore, 2d Eng. Ecl. Rep. 342, a case on which the circuit court in its charge to the jury, and the counsel on both sides, seem to have much relied. The learned and able judge in that case, observes, “that the legal principles, as to testamentary papers of every description, vary much as to the stage of maturity, at which those papers have arrived. The presumption of law, indeed, is against every testamentary paper not actually executed by the testator. But if the paper be complete in all other respects, that presumption is slight and feeble, and one comparatively easily repelled. But where a paper is unfinished, as well as unexecuted, (especially where it is just began, and contains only a few clauses or bequests,) not only must its being unfinished and unexecuted be accounted for, but it must also be proved (for the court will not presume it) to express the testator’s intentions, in order to repel the legal presumption against its validity. It must be clearly made to appear, upon a just view of all the facts and circumstances of the case, that the deceased had come to a final resolution respecting it as far as it goes, so that, by establishing it, even in such its imperfect state, the court will give effect to, and not thwart or defeat, the testator’s real wishes and intentions, in respect to the property which it purports to bequeath, in order to entitle such a paper to probate, in any case, in my opinion.” In the many cases referred to, or existing on this subject, there is, perhaps, none which contains language or announces a principle subjecting papers of this description to a severer test, when propounded for probate. Yet, the case before us, is so made out, we think as to abide that test. The chief argument, however, against the *217 validity of the instrument upon the record, offered to us here, attempts to seek its support in the principle stated, that the court must see to it, that in establishing such unfinished paper, they give effect to, not thwart and defeat the real wishes, and purposes of the deceased. For it is said, his will was, that his land should be sold and you cannot, therefore, give effect to the entire wish of the testator. But this is a mistaken view of the matter. The real wishes and purposes of the deceased, referred to by Sir John Nichol, relate to the objects of testator’s bounty, who, if the will had been finished, might have been brought forward to participate in some •measure in the bequests given to those named. If the real as well as the personal estate be given to the same objects of the testator’s bounty, or the real estate be directed to be sold to pay legacies to them, and the paper is not so finished and so executed as to pass real estate, you cannot be said to thwart and defeat the real wishes of the testator, if you give to the objects of his bounty, all you can, the personal estate. To refuse to do that, because you cannot give effect to his entire wishes in their behalf, nor make his bounty so ample, as he intended, would be to thwart and defeat, not to give effect to the sense and meaning of Sir John Nichol. If, indeed, in an unexecuted instrument, personal property be given to A, and real to B, and from sudden death, the testator cannot finish the instrument so that the land cannot pass, it might be doubtful, whether in such a case, if the will were set up, as to the personal property, the real wishes of the testator, if he could have foreseen such a state of things, would not be defeated thereby. But here the land is to be sold to pay the money-legacies, for it is in proof, that the testator had not Turnpike stock, and, therefore, meant the money-legacies to be so invested. What the court says, in its charge to the jury, on the subject of the course of a court of chancery, where .a charge is made on both real and personal property, that the latter must be first sold and exhausted before the former can be called in aid, is admitted by the counsel of plaintiffs to be correct, but is alledged to have been misplaced and irrelevant, and calculated to mislead the jury. We do not perceive the ground on which the plaintiffs in error, can complain of that part of the charge, nor how, if it were held to be irrelevant, it could have misled the jury.
Upon the whole, we think, there is nothing which on grounds of Jaw or fact, ought to disturb the verdict and judgment which have been rendered in the case, and we, therefore, affirm them.